UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO: 00-6069 CIV-FERGUSON
Magistrate Snow

MOSES HOPE,

Plaintiff,

v.

DAVID STRAUSS, individually
ANTHONY FERNANDEZ, individually
and the CITY OF HOLLYWOOD,
Florida municipal corporation

Defendant.
_____/

**NIGHT BOX**
**FILED** ~ ᵛ

JAN 16 2001

CLARENCE MADDOX
CLERK, USDC / SDFL / FTL

## DEFENDANT CITY OF HOLLYWOOD'S
## MOTION FOR SUMARY JUDGMENT

The City of Hollywood ("HOLLYWOOD"), by and through its undersigned counsel, and pursuant to Fed. R. Civ. P. 56(b) and S.D. Fla. L.R. 7.5 files this, its Motion for Partial Summary Judgment, and in support thereof states:

This is a civil action seeking monetary damages against HOLLYWOOD. Plaintiff has file a five (5) Count Complaint against Defendants. Counts II and III are directed against HOLLYWOOD. Plaintiff alleges that certain actions undertaken by HOLLYWOOD violated his Civil Rights secured by Title 42 U.S.C. §1983. Plaintiff claims that HOLLYWOOD violated his Civil Rights when its police officers allegedly planted evidence on his person and submitted falsified police reports prepared against him to secure a criminal conviction. Plaintiff further claims that HOLLYWOOD is responsible for the negligent supervision by Sergeant Jeffrey Marano of Officer's Fernandez and Strauss - who arrested Plaintiff. HOLYYWOOD denies both allegations.

33

Plaintiff also alleges that HOLLYWOOD has a custom, policy and practice of submitting false police reports that are accompanied by affidavits attesting to the truthfulness of the reports that are prepared in advance of any arrest. Plaintiff also alleges that the Sergeant Marano knew of this policy, custom and practice, and thus negligently supervised the Officers involved in Plaintiff's arrest.

HOLLYWOOD denies that its Officers planted any evidence upon Plaintiff, used false information against the plaintiff to effectuate an arrest, and that it has or had in the past a policy, custom or practice of submitting false police reports accompanied by pre-notarized affidavits. Finally, Hollywood denies that Sergeant Marano negligently supervised his subordinates. In fact, Plaintiff cannot produce or show through any competent evidence, either circumstantial or otherwise, that: 1) HOLLYWOOD has or had a custom, policy or practice of submitting false police reports; 2) that the officers involved in effectuating his arrest were negligently supervised; 3) that the officers involved planted any narcotics upon Plaintiff; and 4) that his injuries were a result of the same. Therefore, because there is no issue of material fact regarding the material allegations against HOLLYWOOD, it is entitled, as a matter of law, to Summary Judgment as to Counts II and III.

## CONCISE STATEMENT OF MATERIAL FACTS

On or about September 17, 1995, Officer David Strauss arrested Plaintiff for possession of cocaine with the intent to deliver. The arrest occurred as a result of a surveillance conducted by Officer Anthony Fernandez, a member of the Hollywood Police Department's Street Crimes Unit. The arrest was effected at 2247 Simms Street, at approximately 6:11 p.m.

2

During the surveillance, Officer Fernandez, who was not detected by the Plaintiff, but nevertheless, was in such close proximity to the Plaintiff that he watched the Plaintiff make two drug transactions. During the transactions, Plaintiff recovered pieces of crack cocaine from the base of a tree, and, in exchange for U.S. currency, delivered the cocaine to two different buyers. Officer Fernandez, After witnessing the two transactions, then called for back-up. At that time, various members of the Street Crimes Unit approached the area and arrested the Plaintiff and several other males who were in the vicinity playing a dice game. Officer Fernandez then instructed Officer Strauss to the location where he witnessed the Plaintiff retrieve the cocaine. Officer Strauss recovered the narcotics. Plaintiff was arrested for possession of crack cocaine with the intent to deliver. The narcotics were sent to the Broward County Sheriff's Crime Laboratory where they were tested and determined to contain cocaine.

## APPLICABLE STANDARD

"Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-2553 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248, 106 S.Ct. 2505, 1510 (1986) (emphasis in original). The non-movant need not be given the benefit of every inference but only every reasonable inference. Brown v. City of Clewiston, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988). As the Supreme Court noted in

3

Anderson, "[t]here is no issue for trial unless there is sufficient evidence favoring the
non-moving party for a jury to return a verdict for the party. If the evidence is merely
colorable, or is not significantly probative, summary judgment may be granted."
Anderson, 477 U.S. at 250-251, 106 S.Ct. at 2511. "Summary judgment procedure is
properly regarded not as a disfavored procedural shortcut, but rather is an integral part of
the federal rules as a whole, which are designed to secure the just, speedy and
inexpensive determination of every action.". Celotex, 477 U.S. at 327, 106 S.Ct. at 2555;
Barnes v. Southwest Forest Industries, Inc., 814 F.2d 607, 609 (11th Cir. 1987).

## I.   CUSTOM, POLICY AND PRACTICE CLAIM PURSUANT TO 42 U.S.C.1983

Count II of Plaintiff's Complaint is brought against the City of Hollywood
pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983. Where a Plaintiff claims that
a municipality has not directly inflicted injury, but nonetheless has caused an employee to
do so, vigorous standards of culpability and causation must be applied to insure that the
municipality is not held liable solely for actions of its employees. The mere fact that a
plaintiff has suffered deprivation of federal rights at the hands of a municipal employee
will not alone permit inference of municipal culpability and causation in a § 1983 action.
Board of County Commissioners of Bryan County, 107 S.Ct. 1382, 1389 (1997).
Deliberate indifference to the Plaintiff's fairly protected right is a stringent standard of
fault, requiring proof that a municipal actor disregarded known or obvious consequences
of the action. Id. at 1391.

A municipality may not be held liable pursuant to the Civil Rights Act based upon
the doctrine of respondeat superior. Rather, it is "when execution of a government policy
or custom . . . . inflicts the injury that the government as an entity is responsible under §

4

1983". Monell v. Department of Social Services of New York, 98 S.Ct. 3018, 2037-

2038, 63 6 U.S. 658,694, 56 L.Ed. 611 (1978) (emphasis added). This being the case, a

plaintiff seeking relief under 42 U.S.C. § 1983 must affirmatively establish a particular

"policy or custom" that is held by the city and prove how the policy or custom has caused

his injury.

> "If a city may be liable only where the injuries inflicted in the execution of
> city policy, the complainants must identify the policy, connect the policy
> to the city itself and show that the particular injury was incurred because
> of the execution of that policy."

Bennett v. City of Slidell, 728 F.2d 762, 767 (5th Cir. 1984) (en banc). See also Searcy v.

City of Dayton, 38 F. 3d 282, 287 (6th Cir. 1994).

Municipal "policy" has been defined as a "course of action consciously chosen

from among various alternatives" respecting basic governmental functions. City of

Oklahoma City v. Tuttle, 471 U.S. 808, 823, 105 S. Ct. 2427,2436, 85 L.Ed. 2d 791

(1985). Municipal "policy" is found most obviously in municipal ordinances, regulations

and the like which directly command or authorize constitutional violations. Spell v.

McDaniel, 824 F. 2d 1380, 1385 (4th Cir. 1987). If the policy itself is unconstitutional,

proof of a single incident may be sufficient to establish liability to the municipality under

§ 1983 provided the proof also establishes that the policy was promulgated by the

municipality. Tuttle, 471 U.S. at 823-824, 105 S. Ct. at 2436.

"Custom" consists of those practices of City officials that are "so permanent and

well settled" as to have "the force of law". Monell, 436 U.S. at 691, 98 S. Ct. at 2036. In

defining custom in this fashion, the Monell court borrowed language from Adickes v.

S.H. Kress & Co., 398 U.S. 144, 167-68, 90 S. Ct. 1598, 1613-14, 26 L.Ed.2d 142

(1970), which defines the term "custom" as "persistent and wide spread...practices" or

practices that are " permanent and well settled" or "deeply imbedded traditional ways of carrying out ... policy" Id. Accord, Bennett, 728 F.2d 762. Monell additionally teaches that the city customs which may serve as the basis for liability may only be created by city lawmakers or those whose edicts or acts may fairly be said to represent official policy." Monell 436 U.S. at 694, 98 S. Ct. at 2037-38. The Plaintiff in this case has failed to offer any competent evidence, either circumstantial or otherwise, that the City of Hollywood has improper customs, policies or practices that resulted in the alleged injuries to the Plaintiff. Therefore, summary judgment as to Count II in favor of the City of Hollywood and against the Plaintiff is proper.

In his complaint Plaintiff alleges that the arresting officer submitted a false police report which was supported by an affidavit which was pre-notarized thereby relinquishing the officer to attest to the truth of the report in an effort to obtain the arrest of the Plaintiff. (Complaint paragraph 47, 48) However, Plaintiff has failed to provide any evidence that it is the custom, policy and practice of HOLLYWOOD to submit pre-notarized affidavits attached to false police reports or that the report submitted was pre-notarized and false. Plaintiff has merely made conclusory accusations.    Officer Fernandez's affidavit reflects his recollection of the events, which ultimately resulted in the Plaintiff's arrest.    To claim that it was the custom, policy and practice of HOLLYWOOD to submit false police reports is to state that HOLLYWOOD not only promotes wrongful conduct but also has a policy of illegal activity within the police department.  Clearly the City's Police Department does not have a policy of promoting illegal activity.

6

Upon review of the document itself[1], one can see that it is signed, dated and notarized on the same day of the arrest. Officer Fernandez testified to this fact during his deposition. Officer Fernandez also stated during his deposition that on the same day of the arrest he dictated his probable cause affidavit.[2] Officer Fernandez further stated that his dictation was done immediately because the document itself must accompany the suspect to the Broward Sheriff's Office.[3]

In order to prevail under §1983 action, Plaintiff must show his injuries were the result of a "government policy or custom" and must establish that a particular policy or custom actually existed, and prove how the policy or custom caused his injury. The Plaintiff has failed to prove that the City of Hollywood has any customs or policies in place that authorize, require or allow its police officers to submit false official police reports in the pursuit of its legal duties and responsibilities and has further failed to show that this "policy" somehow resulted in alleged injuries to the Plaintiff. Plaintiff also fails to show that Officer Fernandez and Strauss were inadequately or negligently instructed or supervised and that this somehow caused Plaintiff injury.

Furthermore, Plaintiff has failed to prove that the City's policy, as Plaintiff alleges, of not requiring the police officers to swear to the truthfulness of official reports was the proximate cause of his injuries. Plaintiff's only allegation of proximate cause is found in paragraph 48 of the complaint that states:

"If Defendant City of Hollywood implemented and enforced procedures designed to prevent the problems set forth herein, including but not limited to the discipline of employees who failed to follow the notary public laws, the use of false or

[1] See Probable Cause Affidavit, attached hereto as Exhibit "A"
[2] See Deposition of Anthony Fernandez, Page 52, Line 14-16

[3] See Deposition of AnthonyFernandez, Page 52, Line 17-20

7

planted evidence in an effort to obtain a criminal conviction would have been prevented".

This allegation is nothing more than a conclusory statement.

In order to prevail on a claim arising under §1983 Plaintiff must identify and produce direct evidence of some policy, custom or practice attributable to the City of Hollywood, which was the moving force behind the alleged constitutional injury. That is, the Plaintiff must demonstrate through its deliberate conduct, the City was "the moving force" behind the injury alleged. Plaintiff must prove that the action was taken with a reckless degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights. Board of the County Commissioners of Bryan County, Oklahoma v. Brown, 1977 WL 2019925, S.Ct.___ (1997). "It is only when the execution of the government policy or custom...inflicts the injury, that the municipality may be liable under § 1983". Gold v. City of Miami, 151 F.3d. 1346, 1349 (11th Cir.1998). Here, HOLLYWOOD did not have a custom or policy that was the "moving force" behind the Plaintiff's alleged injuries. As stated in the affidavit of Joel Cantor, Legal Advisor for the Hollywood Police Department, HOLLYWOOD does not have a custom, policy or practice of training its police officer to act with reckless abandon or deliberate indifference.[4]  Mr. Cantor further states that police officers are trained regarding the methods of arrest and preservation of evidence.[5]

There has been no evidence nor can any competent evidence be produced, that Officer Fernandez had a practice of violating the notary public laws or that he consistently planted evidence on suspects to obtain criminal convictions. As the attached affidavit states, Officer Fernandez had never been accused of violating any of the Police

---

[4] See Affidavit of Joel Cantor, attached hereto as Exhibit "B"

Departments rules and regulations at the time of the Plaintiff's arrest.[6] Moreover,
Plaintiff cannot establish that had the Officer not sworn to the truthfulness of the probable
cause affidavit, he would not have been arrested. In fact, he would have still been
arrested. Thus, the alleged failure of swearing to the official report could not have been
the proximate cause of the alleged injuries of the Plaintiff.

The Plaintiff has failed to offer any evidence that the City of Hollywood has
improper customs or policies that resulted in his alleged injuries. However
HOLLYWOOD has offered evidence that establishes that HOLLYWOOD does not have
any custom, policy or practice of submitting falsified police reports or of "planting"
evidence on a suspect to obtain a criminal conviction. Therefore, summary judgment in
favor of HOLLYWOOD is proper.

## II Negligent Supervision

Plaintiff also alleges in his complaint that Sergeant Marano, acting in the course
and scope of his employment with HOLLYWOOD had a duty to supervise his
subordinates in their duties including the defendant Strauss and Fernandez.[7] Specifically,
Plaintiff alleges that Sergeant Marano failed to supervise the officers when evidence was
allegedly planted and when official reports were allegedly falsified. According to Florida
Statute § 768.28, a municipality may be liable for action of its employees unless such
officer, employee or agent acted in bad faith or with malicious purpose or in a manner
exhibiting wanton and willful disregard of human rights, safety or property." Fla. Stat. §
768.28 (1997). If the Plaintiff's allegations were in fact true, such actions by definition

---

[5] See Affidavit of Joel Cantor, attached hereto as Exhibit "B"
[6] See Affidavit of Joel Cantor, attached hereto as Exhibit "B"

were done in bad faith and with malicious purposes and therefore HOLLYWOOD is not liable.

Florida Courts have not allowed Plaintiff's to in effect "get around" the rule that a governmental entity is not liable for the malicious actions of the government employee by simply filing a complaint alleging that the government employer "negligently supervised" the employee. In Sheridan v. United States, 487 U.S. 392, 397, 108 S. Ct. 2449, 2453, 101 L.Ed. 2d 352, (1988), the Supreme Court held that the government may be held liable for negligence which is "entirely independent of the intentional tortfeasor employment status". In Sheridan the Plaintiff made a claim under the Federal Tort Claims Act, which shields the federal government from liability from intentional tort. The Court held, that the intentional tort exception did not apply because the employment status of the intentional tortfeasor "had nothing to do with the basis for imposing liability on the Government". Id. However, the Court made clear that "if the allegation is that the Government was negligent in the supervision or selection of the employee and that the intentional tort occurred as a result, the intentional tort exception of § 2680 (h) bars the claim, otherwise litigants could avoid the substance of the exception because it is likely that many, if not all, intentional torts of Government employees plausibly could be ascribed to the negligence of the tortfeasor's supervisor. To allow such claims would frustrate the purpose of the exception". Sheridan, 487 U.S. at 406-7 (Kennedy, concurring).

Relying upon Sheridan, courts have not permitted "negligent supervision" claims which are not "independent" of the intentional tortfeasor to circumvent the intentional tort exception. In Guccione v. United States, 878 F. 2d 32 (2nd Cir. 1989), a claim of

---

[7] See Plaintiff's Complaint, paragraph 58

negligent supervision was brought against the United States under the Federal Tort Claims Act for failing to supervise a government agent who committed an intentional tort. The Court concluded that no independent relationship existed between the United States and the agent. The agent would not be under supervision if he was not carrying out the government's objectives. Thus, the Plaintiff could not "get around" the intentional tort exception and as such his claim was dismissed. See also <u>Medrano v. City of Pearsall</u>, 989 S.W. 2d 141 (Tx. App.—San Antonio 1999) (affirming dismissal of claim against the city where Plaintiff attempted to circumvent the intentional tort exception be merely alleging negligent supervision).

Although the above-referenced cases applied federal law, the same analogy can be applied here. Both Officer Strauss and Fernandez were within the course and scope of their employment as police officers at the time of the Plaintiff's arrest. Sergeant Marano's duty was to exercise reasonable care in the supervision of his subordinates. Any negligent supervision on the part of Sergeant Marano was not completely independent of the officers' employment status. Sergeant Marano would not have been supervising the officers had they not been carrying out official police business. Plaintiff's claim is an attempt to circumvent the intentional tort exception of §768.28. Plaintiff has not established a cause of action for negligent supervision under state law and therefore, summary judgment as to Count III in favor of HOLLYWOOD is proper.

## CONCLUSION

The Plaintiff has failed to offer any competent evidence either circumstantial or otherwise to establish that the City of Hollywood has either a custom, policy or practice

of "planting" evidence on suspects to obtain criminal convictions or to submit false official police reports. Plaintiff has also failed to establish that Sergeant Marano was negligent in his supervision of the police officers during the scope and course of their employment. At most, Plaintiff has made conclusory allegations. Such allegations and other factual contentions do not have evidentiary support. Therefore, summary judgment as to Count II and III in favor of the City of Hollywood would be proper.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing was mailed this _ day of January, 2001 to the above-named addresses and to: Hugh L. Koerner, Esq. 100 S.E. Sixth Street, Fort Lauderdale, FL 33301 and Bruce W. Jolly, Esquire, Purdy, Jolly & Giuffreda, P.A., 1322 S.E. Third Avenue, Fort Lauderdale, FL 33316.

Respectfully submitted,

DANIEL L. ABBOTT,
CITY ATTORNEY
City of Hollywood
2600 Hollywood Boulevard, Suite 407
Hollywood, Florida 33020
Telephone: (954) 921-3435
Telecopier: (954) 921-3081

By: _____
Tracy Lyons
Assistant City Attorney
Fla. Bar No. 0141585

BROWARD COUNTY HW 754180    SHOULD    US MUST BE ANSWERED IF DEFENDANT NO    TODY

ARREST NO _____    OBTS NO _____

| FILING AGENT HW | OFFENSE REPORT 95-119747 | LOCAL I.D NO - | FDLE | FBI | SS NO 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 |
|---|---|---|---|---|---|

| DEFENDANT S LAST NAME HOPE | FIRST MOSES BRYANT | MIDDLE | SUF | ALIAS STREET NAME | | CITIZENSHIP US |
|---|---|---|---|---|---|

| RC B | SEX M | HGT 506 | EYES BRO | HAIR BLK | WG: 152 | COMP DRK | AGE 28 | DOB 12/27/66 | BIRTHPLACE FL | SCARS, MARKS, TT TATTOO-ULARM- |
|---|---|---|---|---|---|---|---|---|---|---|

| PERMANENT ADDRESS 2210 DOUGLAS ST, HOLLYWOOD, FL | LOCAL ADDRESS |
|---|---|

| RESIDENCE TYPE 1 (1) CITY (2) COUNTY (3) FLORIDA (4) OUT-OF-STATE | PLACE OF EMPLOYMENT WESTBROOK & BROTHERS CONSTRUCT | LENGTH |
|---|---|---|

| HOW LONG DEFENDANT IN BROWARD COUNTY- yrs 28 | BREATHALYZER BY/CCN | READING | PLACE OF ARREST 2247 SIMMS ST, HOLLYW | DATE/TIME ARRESTED 09/17/95 18:11 | ARRESTING OFFICER(S) CCN 1902 | 2039 |
|---|---|---|---|---|---|---|

| OFFICER INJURED Y☐ N☒ | UNIT | ZONE | BEAT | SHIFT | UNIT TRANSPORTING PRISONER | TRANSPORTING OFFICER/CCN | PICK-UP TIME- | DRUG TYPE CO |
|---|---|---|---|---|---|---|---|---|

TIME ARRIVED AT BSO-

TYPE: N-N/A A-AMPHETAMINE E-HEROIN    B-BARBITUATE F-COCAINE D-OPIUM    H-HALLUCINOGEN M-MARIJUANA S-SYNTHETIC    P-PARAPHERNALIA    U-UNKNOWN Z-OTHER    ACTIVITY P    ACTIVITY N-V-A P-POSSESS    S-SELL B-BUY T-TRAFFIC    N-SMUGGLE D-DELIVER E-USE    M-MANUFACTURE PRODUCE CULTIVATE    K-DISPENSE DISTRIBUTE    Z-OTHER

INDICATION OF ALCOHOL INFLUENCE / DRUG INFLUENCE    Y N UN ☒

ATTACH DEFENDANTS PHOTO

DEFENDANT'S VEHICLE-MAKE _____ TYPE ____ YEAR ____ COLOR ____ VIN. NO. _____

VEHICLE TOWED TO _____ TAG NO _____ OTHER IDENTIFIERS OR REMARKS _____

# TRANSPORTED TO BSO

| NAME OF VICTIM (IF CORPORATION, EXACT LEGAL NAME AND STATE OF INCORP) FLORIDA STATE OF | ADDRESS | PHONE # |
|---|---|---|

| COUNT NO. | OFFENSES CHARGED | CITATION #, IF APPLICABLE | F.S.# OR CAPIAS/WARRANT # |
|---|---|---|---|
| 1 | POSSESS COCAINE WITH INTENT TO DELIVER | | 893.13(1A) |
| | | | |
| | | | |
| | | | |

## PROBABLE CAUSE AFFIDAVIT

Before me this date personally appeared FERNANDEZ, ANTHONY _____ who being first duly sworn deposes and says that on 17th day September 19 95 at 2247 SIMMS ST, HOLLYWOOD, FL _____ (crime location) the above named defendant committed the above offenses charged and the facts showing probable cause to believe same are as follows

ON 09/17/95, AT OR ABOUT 1811 HOURS, AT THE LOCATION OF 2247 SIMMS ST, WHICH IS

LOCATED WITHIN THE JURISDICTIONAL LIMITS OF THE CITY OF HOLLYWOOD, IN THE COUNTY OF

BROWARD AND THE STATE OF FLORIDA, THE ABOVE NAMED DEFENDANT DID COMMIT THE VIOLATION OF

POSSESSION OF COCAINE. MOSES BRYANT HOPE DID HAVE IN HER ACTUAL OR CONSTRUCTIVE

POSSESSION A CONTROLLED SUBSTANCE, TO WIT: COCAINE, IN AN AMOUNT OF TWENTY EIGHT (28)

GRAMS OR LESS. A VALTOX TEST WAS CONDUCTED ON THE SUSPECT COCAINE BY OFFICER STRAUSS

#2039 AND TESTED POSITIVE FOR THE PRESENCE OF COCAINE. THE REMAINDER WAS SENT TO THE

I swear the above statement is correct and true to the best of my knowledge and belief.

OFFICER/AFFIANT'S SIGNATURE 1902    FERNANDEZ 1802 OFFICER'S NAME/CCN    SCU OFFICER'S DIVISION

STATE OF Florida COUNTY OF Broward
The foregoing instrument was acknowledged before me this 17 day of Sept 19 95 who personally known to me or who has produced (ID Type) _____ as identification and who DID OR DID NOT take an oath.

_____ 2283 CO

DEPUTY CLERK OF THE COURT, NOTARY PUBLIC, OR ASSISTANT STATE ATTORNEY

SEVENTEENTH JUDICIAL CIRCUIT

(SEAL OR STAMP)

# EXHIBIT "A"

TITLE OR RANK/CCN

BROWARD COUNTY    HW?54180

☐ COMPLAINT AFFIDAVIT    PAGE   2   of    ☐ ARREST FORM

PROBABLE CAUSE AFFIDAVIT CONTINUATION

ARREST NO _____     OBTS NO _____

| DEFENDANT S LAST NAME | FIRST | MIDDLE | SUF | HGT | WGT | RC | SEX | DOB 12/27/66 | OFFENSE REPORT | ARRESTING OFFICER (S) CCN | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| HOPE | | MOSES BRYANT | | 506 | 152 | B | M | | 95-119747 | 1902 | 2039 |

| NAME OF VICTIM (IF CORPORATION, EXACT LEGAL NAME AND STATE OF INCORP ) | ADDRESS | PHONE # |
|---|---|---|
| FLORIDA STATE OF | | |

| COUNT NO | OFFENSES CHARGED | CITATION #, IF APPLICABLE | FS # OR CAPIAS/WARRANT # |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

Before me this date personally appeared   FERNANDEZ, ANTHONY        who being first duly swor

deposes and says that on   17th   day   September   19   95   at   2247 SIMMS ST, HOLLYWOOD, FL   (crime location) th-

above named defendant committed the above offenses charged and the facts showing probable cause to believe same are as follows - . . . .

BROWARD COUNTY SHERIFF'S OFFICE LABORATORY FOR

ANALYSIS.

THE UNDERSIGNED IS A MEMBER OF THE HOLLYWOOD STREET CRIMES UNIT. WHO OPERATE IN

PLAIN CLOTHES AND DRIVE UNMARKED POLICE VEHICLES.

ON 09/17/95 THE UNDERSIGNED'S UNIT WAS INSTRUCTED TO INVESTIGATE COMPLAINTS OF

NARCOTICS SALES, GAMBLING, AND LOITERING AT 2247 SIMMS ST. THE UNDERSIGNED, ALONG WITH

SGT MARANO, OFFICERS STRAUSS, FERNANDER, AND TRUNTZ, RESPONDED INTO THE IMMEDIATE AREA.

PRIOR TO DRIVING TO 2247 SIMMS ST, SGT MARANO DROPPED OFF THE UNDERSIGNED JUST WEST OF

THE LOCATION. THE UNDERSIGNED FOUND A POSITION IN WHICH 2247 COULD BE SURVEILLED FOR

THIS TYPE OF ACTIVITY. THE UNDERSIGNED OBSERVED SEVERAL SUBJECTS INVOLVED IN A DICE

GAME ON THE SIDEWALK IN FRONT OF 2247 SIMMS ST FROM AN UNDISCLOSED PROXIMITY WITH A   LOCATION

CLEAR AND UNOBSTRUCTED VIEW. APPROXIMATELY 5-7 MINUTES INTO THE SURVEILLANCE, A

SUBJECT, WHO IS KNOWN TO THE UNDERSIGNED AS THE ABOVE DEFENDANT HOPE, WAS OBSERVED TO

EXIT THE SOUTHERNMOST APARTMENT WEARING A MULTI COLORED STRIPED SHIRT AND LONG JEAN

SHORTS. DEFENDANT HOPE STOOD IN AND AROUND THE DICE GAME FOR SEVERAL MINUTES BEFORE A

VEHICLE PROCEEDING FROM THE EAST ON SIMMS ST STOPPED AT THE CORNER OF N 23RD AVE AND

SIMMS. A LONE B/M HAILED TO DEFENDANT HOPE. DEFENDANT HOPE APPROACHED THE PASSENGER

SIDE OF THE VEHICLE WITH THE WINDOW DOWN, AT WHICH TIME A CONVERSATION COULD BE HEARD

I swear the above statement is correct and true to the best of my knowledge and belief.

OFFICER/AFFIANT'S SIGNATURE     OFFICER'S NAME/CCN     OFFICER'S DIVISION

STATE OF Florida COUNTY OF Broward

The foregoing instrument was acknowledged before me this 17 day of Sept , 19 95 , who personally

known to me or who has produced (ID Type) _____ as identification and who (DID OR DID NOT) take an oath.     (SEAL OR STAMP)

DEPUTY CLERK OF THE COURT NOTARY PUBLIC OR ASSISTANT STATE ATTORNEY     TITLE OR RANK/CCN

BROWARD COUNTY    HW954180    PROBABLE CAUSE AFFIDAVIT CONTINUATION.

□ COMPLAINT AFFIDAVIT

ARREST NO._____    OBTS NO _____

| DEFENDANT'S LAST NAME | FIRST | MIDDLE | SUF | HGT | WGT | RC | SEX | DOB 12/27/66 | OFFENSE REPORT | ARRESTING OFFICER (S)/CCN | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| HOPE | | MOSES BRYANT | | 506 | 152 | B | M | | 95-119747 | 1902 | 2039 |

| NAME OF VICTIM (IF CORPORATION, EXACT LEGAL NAME AND STATE OF INCORP ) FLORIDA STATE OF | ADDRESS | PHONE # |
|---|---|---|

| COUNT NO | OFFENSES CHARGED | CITATION #, IF APPLICABLE | F.S. # OR CAPIAS/WARRANT # |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

Before me this date personally appeared   **FERNANDEZ, ANTHONY**   who being first duly swo'

deposes and says that on ___17th___ day ___September___, 19 _95_ at 2247 SIMMS ST, HOLLYWOOD, FL   (crime location) '

above named defendant committed the above offenses charged and the facts showing probable cause to believe same are as follows: .

FROM THE UNDERSIGNED'S SURVEILLANCE POSITION. THE DEFENDANT STATED TO THE OCCUPANT OF

THE VEHICLE, "HOLD ON MAN". THE DEFENDANT HOPE TURNED AND PROCEEDED TO A TREE IN THE

COURTYARD OF 2247 SIMMS ST, KNELT DOWN NEAR THE BASE OF THE TREE, REMOVED STONES AT THE

BASE OF THE TREE, AND RETRIEVED A BLUE PLASTIC BAG FROM THE GROUND. DEFENDANT AGAIN

APPROACHED THE VEHICLE, AT WHICH TIME DEFENDANT HOPE DELIVERED A SMALL OFF WHITE ROCK TO

THE OCCUPANT OF SAID VEHICLE IN EXCHANGE FOR U S CURRENCY. DEFENDANT HOPE THEN

PROCEEDED BACK TO THE TREE AND REPLACED THE BLUE PLASTIC BAGGIE TO THE GROUND, COVERING

THE PLASTIC BAGGIE WITH STONES. DEFENDANT HOPE THEN RETURNED TO THE VICINITY OF THE

DICE GAME AND STOOD FOR SEVERAL MINUTES. SEVERAL MINUTES PASSED WHEN A SUBJECT ON A

BICYCLE APPROACHED AND ENGAGED IN A CONVERSATION WITH DEFENDANT HOPE. DEFENDANT HOPE

THEN INSTRUCTED THE SUBJECT ON THE BICYCLE TO RIDE BEHIND THE DUMPSTER WHICH WAS AT THE

SOUTH SIDE OF THE PARKING LOT. ONCE THE SUBJECT ON A BICYCLE DID SO, DEFENDANT HOPE

THEN APPROACHED THE TREE IN THE SAME MANNER, REMOVED STONES, RETRIEVING THE BLUE PLASTIC

BAGGIE. AS DEFENDANT HOPE RETURNED, ANOTHER TRANSACTION OCCURRED. THE B/M ON THE

BICYCLE LEFT NORTHBOUND ON N 23RD AVE AS DEFENDANT HOPE THEN RETURNED TO THE TREE AND

BEGAN TO BURY THE BLUE PLASTIC BAGGIE.

ONCE THE NARCOTICS DEAL WAS WITNESSED BY THE UNDERSIGNED, THE UNDERSIGNED GAVE WORD

VIA POLICE RADIO FOR OTHER MEMBERS OF THE HOLLYWOOD STREET CRIMES UNIT TO MOVE IN,

I swear the above statement is correct and true to the best of my knowledge and belief.

OFFICER/AFFIANT'S SIGNATURE      FERNANDEZ / 1902      S.C.U.

OFFICER'S NAME/CCN      OFFICER'S DIVISION

STATE OF Florida COUNTY OF Broward

The foregoing instrument was acknowledged before me this _17_ day of _Sept_, 19 _95_, who is personally

known to me or who has produced (ID Type) _____ as identification and who _____ take an oath.

(DID OR DID NOT)      (SEAL OR STAMP)

2283

DEPUTY CLERK OF THE COURT, NOTARY PUBLIC, OR ASSISTANT STATE ATTORNEY      TITLE OR RANK/CCN

□ COMPLAINT AFFIDAVIT                                    PAGE  4  of  □ ARREST FORM
PROBABLE CAUSE AFFIDAVIT CONTINUATION

BROWARD COUNTY    HW954180
ARREST NO _____

OBTS NO _____

| DEFENDANT S LAST NAME | FIRST | MIDDLE | SUF | HGT | WGT | RC | SEX | D.O.B. 12/27/68 | OFFENSE REPORT | ARRESTING OFFICER (S)/CCN | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| HOPE | MOSES | BRYANT | | 506 | 132 | B | M | | 95-117747 | 1902 | 2032 |

NAME OF VICTIM (IF CORPORATION EXACT LEGAL NAME AND STATE OF INCORP )   ADDRESS   PHONE #
=LORIDA STATE OF

| COUNT NO | OFFENSES CHARGED | CITATION #, IF APPLICABLE | FS # OR CAPIAS/WARRANT # |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

Before me this date personally appeared   FERNANDEZ, ANTHONY                    who being first duly swor
deposes and says that on  17th  day  September  19  95  at  2247 STIRHS ST, HOLLYWOOD, FL  (crime location) :=
above named defendant committed the above offenses charged and the facts showing probable cause to believe same are as follows:

GIVING THE DESCRIPTION OF DEFENDANT HOPE AND THE SUBJECT ON THE BICYCLE, INSTRUCTING

THEM THAT A NARCOTICS DEAL WAS BEING DONE AND THAT THE DEFENDANT RETRIEVED NARCOTICS

FROM THE BASE OF A TREE IN THE COURTYARD. AT THIS TIME, OFFICERS STRAUSS, FERNANDER,

TRUNTZ, AND SGT MARANO, MOVED IN IN TWO SEPARATE VEHICLES. SGT MARANO DETAINED

DEFENDANT HOPE. THE UNDERSIGNED, WHILE STILL IN A SURVEILLANCE POSITION, GUIDED OFFICER

STRAUSS TO THE TREE WHERE DEFENDANT HOPE WAS BURYING THE NARCOTICS. OFFICER STRAUSS

REMOVED THE STONES AND RETRIEVED A BLUE ZIPLOCK BAGGIE CONTAINING ONE LARGE ROCK AND ONE

SMALL ROCK STILL LEFT IN THE PLASTIC BAG. DEFENDANT HOPE WAS THEN PLACED INTO CUSTODY

AND TRANSPORTED TO HOLLYWOOD DETENTION BY OFFICER STASIO. NOTE THAT DURING THE

SURVEILLANCE, AFTER EACH NARCOTICS TRANSACTIONS, DEFENDANT HOPE TOOK THE·· ---

U S CURRENCY GIVEN TO HIM BY SAID BUYERS AND PLACED THE U S CURRENCY IN HIS RIGHT FRONT

POCKET. A SEARCH INCIDENT TO ARREST CONDUCTED BY SGT MARANO REVEALED $190 CASH CURRENCY

IN ARRESTEE'S RIGHT FRONT POCKET. THIS CASH IS SUBJECT TO CONFISCATION AND PLACED INTO

HOLLYWOOD PROPERTY.

I swear the above statement is correct and true to the best of my knowledge and belief.

OFFICER AFFIANT'S SIGNATURE    FERNANDEZ / 1902    S.CU
                                OFFICER'S NAME/CCN    OFFICER'S DIVISION

STATE OF Florida COUNTY OF Broward
The foregoing instrument was acknowledged before me this  17  day of  Sept , 19 95 , who is personally
known to me or who has produced (ID type) _____ as identification and who (DID OR DID NOT) take an oath.

228 3  CO                                        (SEAL OR STAMP)

IN THE CIRCUIT COURT OF THE
SEVENTEENTH JUDICIAL CIRCUIT, IN
AND FOR BROWARD COUNTY,
FLORIDA

MOSES HOPE,

        Plaintiff,

v.

DAVID STRAUSS, individually,
ANTHONY FERNANDEZ, individually,
and the CITY HOLLYWOOD, a
Florida Municipal corporation

        Defendants.

_____/

## AFFIDAVIT

STATE OF FLORIDA     )
                      )SS:
COUNTY OF BROWARD  )

BEFORE ME, the undersigned authority, personally appeared Joel Cantor, Hollywood Police Department, Police Legal Advisor, and deposes and states:

1.    My name is Joel Cantor and I am over the age of eighteen (18) years.

2.    I am currently employed by the City of Hollywood, Florida, Police Department as its Police Legal Advisor and have been so employed for over fifteen (15) years as in-house counsel and police instructor.

3.    My duties and responsibilities include maintaining a familiarity with police disciplinary matters, personnel files and rules and regulations.

4.    This Affidavit is predicated upon my personal knowledge and experience and through knowledge obtained from the Police Department's Operations Manual.

5.    The City of Hollywood, Florida, Police Department does not have a custom, policy or practice of training its Police Officers to act with reckless abandon or deliberate indifference .

6.    All Hollywood Police Officers are trained regarding methods of arrest and preservation of evidence.

7.    All Hollywood Police Officers must be certified by the State of Florida and required to complete forty (40) hours of retraining every four years to maintain said certification.

8.    All Hollywood Police Officers receive quarterly in-service training which includes further instructions regarding methods of arrest and additional responsibilities.

9.    It is the custom and practice of the City of Hollywood, Florida, Police Department to instruct its officers to properly conduct their lawful duties while enforcing the laws of the State of Florida and the City of Hollywood.



**EXHIBIT** "B"

10.    Sgt. David Strauss has been a Police Officer for the City of Hollywood, Florida, Police Department since 1990.

11.    Officer Anthony Fernandez has been a Police Officer for the City of Hollywood, Florida, Police Department since 1989.

12.    Prior to the date of the incident alleged in the above-described civil action, Sgt. David Strauss had never been accused of any violation of Police Department rules and regulations.

13.    Prior to the date of the incident alleged in the above-described civil action, Officer Anthony Fernandez had never been accused of any violation of Police Department rules and regulations.

14.    The City of Hollywood, Florida, Police Department has a number of rules and regulations contained in its Police Operations Manual.  Pursuant to Rule 3, a member of the Hollywood Police Department is prohibited from violating any rule, regulation, order, duty, policy or procedure of the Police department.

15.    Sgt. David Strauss and Officer Anthony Fernandez have been adequately and properly trained as members of the City of Hollywood, Florida, Police Department.

FURTHER AFFIANT SAYETH NAUGHT.

Joel D. Cantor, Esq.
Police Legal Advisor

SWORN TO AND SUBSCRIBED before me this 16 day of January, 2001, by Joel D. Cantor, who is personally known to me or who has produced _____ as identification.

Notary Public
State of Florida at Large

LISA MARIA WASSERMAN
Print name of Notary Public
Commission No.

My Commission expires:



LISA MARIA WASSERMAN
MY COMMISSION # CC 832597
EXPIRES: May 17, 2003
Bonded Thru Notary Public Underwriters

1

IN THE UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

FORT LAUDERDALE DIVISION

CASE NO. 00-6069-CIV-FERGUSON/SNOW

MOSES HOPE,                            )
                                       )
            Plaintiff,                 )
                                       )
    vs.                                )
                                       )
DAVID STRAUSS, individually,           )
ANTHONY FERNANDEZ, individually,       )
and the CITY OF HOLLYWOOD, a           )
Florida Municipal corporation,         )
                                       )
                                       )
            Defendant.                 )

                          524 South Andrews Avenue
                          Suite 102-North
                          Fort Lauderdale, Florida
                          November 27, 2000
                          10:00 a.m - 12:00 p.m.

APPEARANCES:

HUGH L. KOERNER, P.A.
BY:  HUGH L. KOERNER, ESQ.
Attorney for the Plaintiff

TRACY LYONS, ESQ,
Attorney for the Defendant, City of Hollywood

PURDY, JOLLY & GIUFFREDA, P.A.
BY:  BRUCE JOLLY, ESQ.
Attorney for the Defendants, Strauss & Fernandez

                    DEPOSITION
                       OF
                 ANTHONY FERNANDEZ

52

1        A.    No.

2        Q.    Are you presently aware, based upon, what

3    is it, detective, in the property section of the

4    various techniques that are available for purposes

5    of ascertaining latent fingerprints?

6        A.    Yes.

7        Q.    Were you aware of any of those techniques

8    in September of 1995?

9        A.    Yes.

10       Q.    Can I assume that all the techniques

11   you're familiar with now you were also familiar with

12   in '95?

13       A.    Yes.

14       Q.    Did you dictate your probable cause

15   affidavit or did you type it yourself, sir?

16       A.    I dictated it.

17       Q.    And back in September of '95 you dictated

18   a PC sheet that would be typed that same day so that

19   it could accompany the suspect down to BSO, correct?

20       A.    That is correct.

21       Q.    Same process as used now?

22       A.    Correct.

23       Q.    And at the time that you dictated your

24   narrative report, did you read off the probable

25   cause affidavit into the narrative report?

IN THE CIRCUIT COURT OF THE
SEVENTEENTH JUDICIAL CIRCUIT, IN
AND FOR BROWARD COUNTY,
FLORIDA

MOSES HOPE,                            Case No.                    **99015887**

    Plaintiff,

    v.

DAVID STRAUSS, individually,
ANTHONY FERNANDEZ, individually,
and the CITY OF HOLLYWOOD, a
Florida Municipal corporation

    Defendants
_____/

## COMPLAINT
## INTRODUCTORY STATEMENT

    1.    This is a civil action seeking money damages against DAVID STRAUSS,

individually, for acts occurring during the course and scope of his employment as a police officer for

Defendant CITY OF HOLLYWOOD, for committing acts, under color of law, which deprived

Plaintiff of rights secured under the Constitution, laws of the United States, and the State of Florida,

and for refusing or neglecting to prevent such deprivations and denials to Plaintiff  Plaintiff alleges

that Defendant STRAUSS used or planted false evidence in an effort to obtain a conviction, in

violation of Plaintiff's Constitutional rights and the laws of the State of Florida.  Plaintiff further

alleges that it was the wide-spread custom, policy, and practice, of members of Defendant CITY OF

HOLLYWOOD's police department, to violate the notary public laws of the State of Florida, such

that law enforcement officers knew they were not required to swear to the truthfulness of official

reports, did not swear to the truthfulness of official reports, and that their official reports would

nevertheless be notarized by employees of Defendant CITY OF HOLLYWOOD as if the reports were made under oath.    Plaintiff further alleges that Defendant CITY OF HOLLYWOOD is liable for negligent supervision of its employees, insofar as the supervisory employee assigned to the supervision of Defendant STRAUSS and Defendant FERNANDEZ failed to supervise either employee at the time of, or following Plaintiff's arrest, and use or planting of false evidence. Plaintiff further alleges that Defendant STRAUSS and Defendant FERNANDEZ caused the commencement of criminal proceedings against Plaintiff for the offense of possession of cocaine with intent to deliver, in the absence of probable cause, by the use of false police reports and the use or planting of evidence in an effort to obtain a conviction.

2        Plaintiff's claims are made pursuant to 42 U.S.C. § 1983 and § 1988, and the Fourth and Fourteenth Amendments to the United States Constitution.    In the event of removal of this action by the Defendants, Plaintiff hereby invokes the supplemental jurisdiction of the United States District Court to hear pendant State tort claims arising under State law, pursuant to 28 U.S.C. § 1367(a), and further invokes the jurisdiction of the United States District Court pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 1331, and 28 U.S.C. § 1343.

3.        Plaintiff has fully complied with all conditions precedent to bringing this action imposed by the laws of the State of Florida, and particularly by the provisions of § 768.28 of the Florida Statutes. A copy of Plaintiff's notice letter and return correspondence is attached hereto, and made a part hereof, as composite Exhibit A.

## PARTIES

4        Plaintiff MOSES HOPE is a citizen and resident of the State of Florida.

5        At all times referred to herein, Defendant DAVID STRAUSS [hereinafter

2

STRAUSS or Defendant STRAUSS] was employed as a police officer for Defendant CITY OF HOLLYWOOD, and was acting under color of law and in such capacity as an agent, servant, and employee of the CITY OF HOLLYWOOD, and was acting under the direction and control of Defendant CITY OF HOLLYWOOD and its police department.

6.    At all times referred to herein, Defendant ANTHONY FERNANDEZ [hereinafter FERNANDEZ or Defendant FERNANDEZ] was employed as a police officer for Defendant CITY OF HOLLYWOOD, and was acting under color of law and at the direction and control of the CITY OF HOLLYWOOD, in such capacity as an agent, servant and employee of the CITY OF HOLLYWOOD and its Police Department.

7.    Defendant CITY OF HOLLYWOOD [hereinafter CITY or CITY OF HOLLYWOOD] is a Florida municipal corporation, organized and existing under the laws of the State of Florida, located in Broward County, and the Southern District of Florida. In this cause, the CITY acted through its agents, employees, and servants, including Defendant STRAUSS, Defendant FERNANDEZ, and others.

8.    Plaintiff sues Defendant STRAUSS and Defendant FERNANDEZ in their individual capacities.

## FACTS COMMON TO ALL COUNTS

9.    On September 17, 1995, Plaintiff MOSES HOPE was at or near 2247 Simms Street, in Hollywood, Florida, located in Broward County, Florida.

10.    Plaintiff was involved in a dice game as members of Defendant CITY OF HOLLYWOOD's so-called "Street Crimes Unit" patrolled the area near 2247 Simms Street in unmarked police cars.

3

11.    At approximately 6:11 p.m. on September 17, 1995, Defendant STRAUSS, along with other members of the "Street Crimes Unit, exited their cars and approached Plaintiff and the dice players.

12.    Plaintiff and the other dice players were informed that they were going to jail for misdemeanor loitering and gambling charges.

13.    All of the players were searched, and U.S. Currency was recovered from Plaintiff's possession and placed into evidence

14.    No drugs or narcotics were recovered at the incident location.

15.    Three arrestees were placed in the rear of a police car for transport to Defendant CITY OF HOLLYWOOD's police department

16.    A computerized dispatch log indicates that the enforcement action at 2247 Simms Street was reported at 6:11 p.m. as "gambling".

17.    A computerized dispatch log further indicates a report of a "prowler/peeping tom" at 2247 Simms Street, at 6:12 p.m.

18.    The computerized dispatch log next reported that Andres Astacio, an employee of Defendant CITY OF HOLLYWOOD, was en route to the police department with three prisoners in custody, including Plaintiff, at 6:17 p.m.

19.    At 6:39 p.m., *after* Plaintiff's arrival at Defendant CITY OF HOLLYWOOD's police department, the computerized dispatch log reported the incident as "narcotics".

20.    While in the Defendant CITY OF HOLLYWOOD police department's holding cell, Plaintiff was informed for the first time by Andres Astacio that he was being charged with possession of cocaine with intent to deliver.

4

21.    Andres Astacio advised Plaintiff, along with his co-arrestees, that he located cocaine in the rear seat of his police car, upon the removal of Plaintiff and his co-arrestees at Defendant CITY OF HOLLYWOOD's police department.

22.    Andres Astacio knew that prior to entering the police car for transport, co-arrestee Clarence Mathis asked to be removed from the rear of the police car because he lacked sufficient room to sit comfortably in the back seat, between co-arrestees Edward Norris and Larry Medlock

23.    Andres Astacio knew that Clarence Mathis was thereafter removed from the rear of the police car, and Plaintiff was substituted in his place.

24    Following the discovery that cocaine was recovered from the rear of the police car previously occupied by a total of four (4) arrestees, Defendant FERNANDEZ prepared a probable cause containing false statements and material omissions.

25.    The false statements and material omissions contained in Defendant FERNANDEZ' probable cause affidavit included false allegations that Defendant FERNANDEZ observed Plaintiff retrieve cocaine rocks from a location near the base of a tree and, and engage in drug sales, prior to the "Street Crimes Unit's" enforcement action.

26.    The false statements and material omissions contained in Defendant FERNANDEZ' probable cause affidavit included false allegations that Defendant FERNANDEZ, from a concealed location, directed Defendant STRAUSS to the location near the base of a tree where Plaintiff allegedly concealed cocaine rocks for the purpose of engaging in additional drug sales

27.    The false statements and material omissions contained in Defendant FERNANDEZ' probable cause affidavit included the material omission that no cocaine was actually

5

reported discovered until Andres Astacio alleged that he found cocaine in the rear seat of the police car he used to transport Plaintiff and two other prisoners, and which had been previously occupied by Clarence Mathis, prior to Clarence Mathis complaining that he lacked sufficient room, resulting in Plaintiff being substituted for Clarence Mathis in the rear of the car.

28.    The false statements and material omissions contained in Defendant STRAUSS' official report included the same false statements and material omissions contained in Defendant FERNANDEZ' reports, as set forth above.

29.    At all times material hereto, Defendant CITY OF HOLLYWOOD had a custom, policy, and practice of submitting incident reports to prosecuting authorities for case filing determination of criminal charges, accompanied by a notarized affidavit of the writer of the report attesting to the truthfulness of the contents of the report, when in reality, the affidavits attesting to the truthfulness of the reports were prepared in advance of any arrest and were affixed to the report by clerical employees on an as needed basis, for submission to prosecuting authorities.

30.    The false statements and material omissions contained in Defendant STRAUSS' official report were made by Defendant STRAUSS with the knowledge that a notary affidavit would be affixed to his report by clerical employees of Defendant CITY OF HOLLYWOOD without the requirement that Defendant STRAUSS swear under oath to the truthfulness of his report.

31.    At all times material hereto, Sergeant Jeffrey A. Marano was in a supervisory position while a member of Defendant CITY of HOLLYWOOD Police Department's "Street Crimes Unit", and was responsible for the supervision of Defendant STRAUSS, Defendant FERNANDEZ, and others.

32.    Sergeant Jeffrey A. Marano was present at the time of Plaintiff's arrest, and

6

personally performed the responsibility of physically detaining Plaintiff at the time members of the "Street Crimes Unit" raided the dice game.

33.    Sergeant Jeffrey A. Marano failed to instruct, supervise, and control Defendants STRAUSS, and Defendant FERNANDEZ, or both, from the use or planting of false evidence in an effort to obtain a conviction, following Plaintiff's arrest.

34    Sergeant Jeffrey A. Marano was aware that no cocaine was recovered by Defendant STRAUSS at the location of Plaintiff's arrest

35    Sergeant Jeffrey A. Marano failed to instruct, supervise, and control Defendants STRAUSS, and Defendant FERNANDEZ, from submitting falsified official reports, falsely asserting that two cocaine rocks were recovered by Defendant STRAUSS at the arrest location

36    Sergeant Jeffrey A. Marano systemically failed to review and sign the sworn police reports of his subordinates, including Defendant STRAUSS and Defendant FERNANDEZ, contrary to his responsibilities as a supervisory employee of Defendant CITY OF HOLLYWOOD's police department.

37    The official reports of Defendant STRAUSS and Defendant FERNANDEZ, as set forth above, were forwarded to the Broward County State Attorney's office case filing unit, for the institution of criminal proceedings against Plaintiff for the offense of possession of cocaine with intent to deliver.

38.    The two (2) cocaine rocks allegedly located by Defendant STRAUSS were forwarded to the Broward County Sheriff's Crime Laboratory, where they were tested by a forensic chemist and determined to contain cocaine.    The results of the tests were forwarded to the Broward

7

County State Attorney's office case filing unit, which thereupon, in conjunction with the false reports of Defendant STRAUSS and Defendant FERNANDEZ, instituted criminal proceedings against Plaintiff for the offense of possession of cocaine with intent to deliver.

39.     Following an investigation by the Broward County State Attorney's Office Public Corruptions Unit, Plaintiff passed a polygraph examination, and the charge of possession of cocaine with intent to distribute was nolle prosequied.

40.     The conduct of Defendant STRAUSS and Defendant FERNANDEZ, and the other members of Defendant CITY OF HOLLYWOOD's police department, as set forth herein, occurred under color of state law.

### CAUSES OF ACTION

### COUNT I
### CONSTITUTIONAL CLAIMS AGAINST DEFENDANT STRAUSS, INDIVIDUALLY, COGNIZABLE UNDER 42 U.S.C. § 1983

For his cause of action against Defendant STRAUSS, individually, in Count I, Plaintiff states:

41     Plaintiff realleges and adopts, as if fully set forth in Count I, the allegations of paragraphs 1 through 40.

42     The conduct of Defendant STRAUSS towards Plaintiff was objectively unreasonable and undertaken in deliberate indifference to Plaintiff's clearly established rights under the Fourth and Fourteenth Amendments and 42 U.S.C. § 1983, to be free from the use of false or planted evidence in an effort to obtain a criminal conviction.

43.     Defendant STRAUSS knew that the allegations set forth in his official reports were false, and that the cocaine recovered by Defendant STRAUSS was actually obtained, if at all, from the rear seat of the police car used to transport Edward Norris, Plaintiff, and Larry Medlock,

8

and from which Clarence Mathis had asked to be removed, and was replaced with Plaintiff.

44.    As a direct and proximate result of the conduct of Defendant STRAUSS, in violation of 42 U.S.C § 1983, Plaintiff has suffered grievously, has been brought into public scandal, and with great humiliation, mental suffering, and damaged reputation.

45.    As a further direct and proximate result of the conduct of Defendant STRAUSS, Plaintiff suffered loss of his liberty and freedom, bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, and medical care and treatment, loss of earnings, loss of ability to earn money, and aggravation of a previously existing condition. The losses are either permanent or continuing and plaintiff will suffer the losses in the future, in violation of Plaintiff's rights.

WHEREFORE, Plaintiff prays,

a.    Judgment for compensatory damages in excess of $ 15,000 dollars,

b.    Judgment for exemplary damages;

c.    Cost of suit;

d.    Reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

e.    Trial by jury as to all issues so triable; and

f.    Such other relief as this Honorable Court may deem just and appropriate.

## COUNT II
## CUSTOM, POLICY AND PRACTICE CLAIM AGAINST
## DEFENDANT CITY OF HOLLYWOOD, COGNIZABLE UNDER 42 U.S.C. § 1983

For his cause of action against Defendant CITY OF HOLLYWOOD, in Count II, Plaintiff states:

46.    Plaintiff realleges and adopts, as if fully set forth in Count II, the allegations

9

of paragraphs 1 through 40.

47.    At all times relevant to this Complaint, and prior to Plaintiff's arrest, it was the wide-spread custom, policy, and practice, of members of Defendant CITY OF HOLLYWOOD's police department, acting under the direction and control of Defendant CITY OF HOLLYWOOD, and pursuant to either official policy or the practice, custom, and usage of Defendant CITY OF HOLLYWOOD, to violate the notary public laws of the State of Florida, such that law enforcement officers knew they were not required to swear to the truthfulness of official reports, did not swear to the truthfulness of official reports, and that their official reports would nevertheless be notarized by employees of Defendant CITY OF HOLLYWOOD as if the reports were made under oath

48.    Prior to the incident involving Plaintiff, Defendant CITY OF HOLLYWOOD knew or should have known of the wide-spread practice of its employees violating the notary public laws of the State of Florida, and of supervisors failing to review the unsworn reports of their subordinates.    Defendant CITY OF HOLLYWOOD failed to implement policies designed to eliminate the practice, or otherwise discipline those who violated the law  [If Defendant CITY OF HOLLYWOOD had implemented and enforced procedures designed to prevent the problems set forth herein, including but not limited to the discipline of employees who failed to follow the notary public laws, the use of false or planted evidence in an effort to obtain a criminal conviction would have been prevented.]

49.    Acting under color of state law, and pursuant to official policy or custom and practice, Defendant CITY OF HOLLYWOOD intentionally, knowingly, recklessly, or with deliberate indifference to the rights of the inhabitants of Broward County, failed to instruct, control, supervise its employees, including notary publics assigned to the case filing unit, and members of the so-called

10

"Street Crimes Unit," with regards to the integrity of official reports, and including the use or planting of evidence in an effort to obtain a criminal conviction.

50. The policy-makers of Defendant CITY OF HOLLYWOOD had knowledge of or, had they diligently exercised their duties to instruct, supervise, control, and implement procedures on a continuing basis, should have had knowledge of the wrongs that were done, as heretofore alleged, or other unlawful or unconstitutional acts that were going to be committed. Defendant CITY OF HOLLYWOOD had the power to prevent or aid in preventing the commission of said wrongs, could have done so, and intentionally, knowingly, or with deliberate indifference to the rights of the inhabitants of Broward County, failed or refused to do so, thereby condoning and encouraging other unlawful and dishonest conduct, including the use or planting of false evidence in an effort to obtain a conviction.

51. The policy-makers of Defendant CITY OF HOLLYWOOD directly or indirectly, under color of state law, approved or ratified the unlawful and deliberately indifferent conduct of its employees, including Defendant STRAUSS, Defendant FERNANDEZ, and others, heretofore described.

52. As a direct and proximate result of the acts described above in violation of 42 U S C § 1983, Plaintiff suffered grievously, has been brought into public scandal, and with great humiliation, mental suffering, and damaged reputation.

53. As a further direct and proximate result of the conduct of Defendant CITY OF HOLLYWOOD, Plaintiff suffered loss of his liberty and freedom, bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, and medical care and treatment, loss of earnings, loss of ability to earn money, and

aggravation of a previously existing condition. The losses are either permanent or continuing and plaintiff will suffer the losses in the future, in violation of Plaintiff's civil rights. Plaintiff has also agreed to pay the undersigned a reasonable fee for his services herein.

WHEREFORE, Plaintiff prays:

    a.    Judgment for compensatory damages in excess of $ 15,000 dollars.

    b.    Cost of suit;

    c.    Reasonable attorney's fees, pursuant to 42 U.S.C. § 1988;

    d.    Trial by jury as to all issues so triable; and

    e.    Such other relief as this Honorable Court may deem just and appropriate.

## COUNT III
## NEGLIGENT SUPERVISION CLAIM AGAINST DEFENDANT
## CITY OF HOLLYWOOD

For Plaintiff's cause of action against Defendant CITY OF HOLLYWOOD in Count III, Plaintiff states:

54    Plaintiff realleges and adopts, as if fully set forth in Count III, the allegations of paragraphs 1 through 40.

55.    Defendant CITY OF HOLLYWOOD assigned supervisory personal, including police sergeants, and other command rank employees, for purposes of supervising and directing the members of its "Street Crimes Unit."

56.    Sergeant Jeffrey A. Marano was responsible for the supervision of those employees of Defendant CITY OF HOLLYWOOD's police department involved in the arrest and detention of Plaintiff.

12

57.    Sergeant Jeffrey A. Marano was present at the time of Plaintiff's arrest, and personally performed the responsibility of physically detaining Plaintiff at the time members of the "Street Crimes Unit" raided the dice game.

58.    Sergeant Jeffrey A. Marano had a duty to supervise subordinates in the course of their duties, including Defendant STRAUSS, Defendant FERNANDEZ, and others

59.    Sergeant Jeffrey A. Marano negligently failed to instruct, supervise, and control Defendants STRAUSS, and Defendant FERNANDEZ, or both, in the performance of their duties, to refrain from the use or planting false evidence in an effort to obtain a conviction.

60    Sergeant Jeffrey A. Marano knew, or in the exercise of reasonable diligence should have known, that no cocaine was located by Defendant STRAUSS at the location of Plaintiff's arrest.

61.    Additionally and alternatively, Sergeant Jeffrey A. Marano negligently failed to instruct, supervise, and control Defendants STRAUSS, and Defendant FERNANDEZ, or both, in the performance of their duties, to refrain from the preparation of falsified official reports

62.    Sergeant Jeffrey A. Marano systemically failed to review and initial the sworn police reports of his subordinates, including Defendant STRAUSS and Defendant FERNANDEZ. If Sergeant Jeffrey A. Marano reviewed and signed the sworn official reports of his subordinates, including Defendant STRAUSS and Defendant FERNANDEZ, he would have known the police reports of Defendants STRAUSS and Defendant FERNANDEZ, were false, and that Defendant STRAUSS, and Defendant FERNANDEZ, or both, used or planted false evidence in an effort to obtain a conviction.

63.    The negligent conduct of Sergeant Jeffrey A. Marano, as set forth herein, was

13

committed in the course and scope of his employment as a supervisory employee for Defendant CITY OF HOLLYWOOD's police department.

64.    As a direct and proximate result of the acts described above, Plaintiff has suffered grievously, has been brought into public scandal, and with great humiliation, mental suffering, and damaged reputation.

65.    As a further direct and proximate result of the conduct of Defendant CITY OF HOLLYWOOD, Plaintiff suffered loss of his liberty and freedom, bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, and medical care and treatment, loss of earnings, loss of ability to earn money, and aggravation of a previously existing condition. The losses are either permanent or continuing and plaintiff will suffer the losses in the future, in violation of Plaintiff's rights.

WHEREFORE, Plaintiff prays:

      a.    Judgment for compensatory damages in excess of $ 15,000 dollars;

      b    Cost of suit,

      c    Trial by jury as to all issues so triable, and

      d    Such other relief as this Honorable Court may deem just and appropriate.

## COUNT IV
## MALICIOUS PROSECUTION CLAIM
## AGAINST DEFENDANT FERNANDEZ, INDIVIDUALLY

For his cause of action against Defendant FERNANDEZ, individually, in Count IV, Plaintiff states:

66.    Plaintiff realleges and adopts, as if fully set forth in Count IV, the allegations of paragraphs 1 through 40.

14

67.    Defendant FERNANDEZ caused felony criminal proceedings to be instituted against Plaintiff with malice and without probable cause by causing police reports to be submitted to prosecuting authorities containing false statements and/or materials omissions, which reports were relied upon by prosecuting authorities.

68.    Alternatively, Defendant FERNANDEZ caused criminal proceedings to *continue* against Plaintiff with malice and without probable cause by failing to promptly disclose exculpatory and impeachment material to prosecuting authorities, including but not limited to the use of false or planted evidence in an effort to obtain a conviction.

69.    The criminal proceedings instituted or continued as a result of the conduct of Defendant FERNANDEZ reached a bona fide resolution in Plaintiff's favor.

70.    As a direct and proximate result of the acts described above, Plaintiff has suffered grievously, has been brought into public scandal, and with great humiliation, mental suffering, and damaged reputation.

71.    As a further direct and proximate result of the conduct of Defendant FERNANDEZ, Plaintiff suffered mental anguish, loss of capacity for the enjoyment of life, and loss of his liberty and freedom, in violation of Plaintiff's rights. Plaintiff's injuries are either permanent or continuing in their nature and Plaintiff will suffer the losses and impairment in the future. Plaintiff has also agreed to pay the undersigned a reasonable fee for his services herein.

WHEREFORE, Plaintiff prays:

a.    Judgment for compensatory damages in excess of $ 15,000 dollars;

b.    Cost of suit;

c.    Trial by jury as to all issues so triable; and

15

d.    Such other relief as this Honorable Court may deem just and appropriate.

## COUNT V
## MALICIOUS PROSECUTION CLAIM
## AGAINST DEFENDANT STRAUSS, INDIVIDUALLY

For his cause of action against Defendant STRAUSS, individually, in Count V, Plaintiff states:

72.    Plaintiff realleges and adopts, as if fully set forth in Count V, the allegations of paragraphs 1 through 40.

73.    Defendant STRAUSS caused criminal proceedings to be instituted against Plaintiff with malice and without probable cause by causing police reports to be submitted to prosecuting authorities containing false statements and/or materials omissions, which reports were relied upon by prosecuting authorities.

74.    Alternatively, Defendant STRAUSS caused criminal proceedings to *continue* against Plaintiff with malice and without probable cause by failing to promptly disclose exculpatory and impeachment material to prosecuting authorities, including but not limited to the use of false or planted evidence in an effort to obtain a conviction.

75.    The criminal proceedings instituted or continued as a result of the conduct of Defendant STRAUSS reached a bona fide resolution in Plaintiff's favor.

76.    As a direct and proximate result of the acts described above, Plaintiff has suffered grievously, has been brought into public scandal, and with great humiliation, mental suffering, and damaged reputation.

77.    As a further direct and proximate result of the conduct of Defendant STRAUSS, Plaintiff suffered mental anguish, loss of capacity for the enjoyment of life, and loss of

16

his liberty and freedom, in violation of Plaintiff's rights. Plaintiff's injuries are either permanent or continuing in their nature and Plaintiff will suffer the losses and impairment in the future. Plaintiff has also agreed to pay the undersigned a reasonable fee for his services herein.

WHEREFORE, Plaintiff prays:

a.    Judgment for compensatory damages in excess of $ 15,000 dollars;

b.    Cost of suit;

c.    Trial by jury as to all issues so triable; and

d.    Such other relief as this Honorable Court may deem just and

appropriate

### DEMAND FOR JURY TRIAL

78.    Plaintiff demands trial by jury on all issues so triable as of right.

Respectfully submitted,

HUGH L. KOERNER, P.A.
Attorney for Plaintiff
100 S.E. Sixth Street
Fort Lauderdale, FL 33301
(954) 522-1235
(954) 522-1176 (Fax)

By

Hugh L. Koerner
Florida Bar No.: 716952

17

The Honorable Mara Giulianti, Mayor
September 1, 1997
Page 2

cocaine in the rear of the police car-- in the general area were Claimant replaced the other individual removed from the car. Claimant was subsequently charged with possession of cocaine.

Officer Anthony Fernandez and Officer David Strauss each prepared supplemental police reports relied upon by the State Attorneys Office to support the criminal prosecution of claimant for possession of cocaine. The contents of the supplemental police reports were not truthful.

The supplemental police reports prepared by Anthony Fernandez and David Strauss were forwarded to the State Attorney's Office accompanied by pre-sworn affidavits of Anthony Fernandez and David Strauss. Contrary to Florida law, the pre-sworn affidavits bear the notary seal and signature of Kathleen Skinner, an employee of the City of Hollywood.

Claimant subsequently passed a polygraph examination regarding his actions on September 17, 1995. As a result, all charges against claimant were nolle prosequied.

The prosecution of claimant for possession of cocaine was instituted in the absence of probable cause, and in violation of the claimant's clearly established constitutional rights. The claimant's causes of action include, but are not limited to, civil rights and state tort claims for false arrest, false imprisonment, negligent hiring and retention, malicious prosecution, failure to disclose exculpatory evidence, conspiracy to violate civil rights, and notary law violations. Claimant's damages exceed one hundred thousand ($100,000.00) dollars.

Very truly yours,

Hugh L. Koerner

LAW OFFICES

# HUGH L. KOERNER, P.A.



100 Southeast Sixth Street
FORT LAUDERDALE, FLORIDA 33301
——————
TELEPHONE: (305) 522-1235
FACSIMILE: (305) 522-1176

September 1, 1997

## CERTIFIED MAIL RETURN RECEIPT # P 459 684 005

The Honorable Mara Giulianti, Mayor
City of Hollywood
2600 Hollywood Blvd.
Hollywood, FL 33022-9045

### NOTICE OF CLAIM PURSUANT TO § 768.28

Re:  Claimant:              Moses Bryant Hope
     Date of Loss:          September 17, 1995
     Incident Location:     2247 Simms Street, Hollywood, Florida
     Incident Report #:     HW95-119747

Dear Mayor Giulianti:

Please be advised that I represent claimant Moses Bryant Hope. The purpose of this correspondence is to serve notice of claim against the City of Hollywood, pursuant to the requirements of § 768.28 of the Florida Statutes.

Moses Bryant Hope was born on December 27, 1966, in Hollywood, Florida. Mr. Hope's Social Security Number is 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. The claimant has no prior adjudicated unpaid claims in excess of two hundred ($200.00) dollars owed to the State, or any of its agencies, officers, or subdivisions.

### Statement of claim

On September 17, 1995, claimant was at 2247 Simms Street, Hollywood, Florida, when he was placed under arrest for gambling/loitering. Several other individuals were placed under arrest on related charges.

Three of the arrested persons were placed in the rear of a City of Hollywood police car for transport to the City of Hollywood Police Department. When one of the arrested persons complained that the back seat of the police car was crowded, he was removed, and replaced by claimant.

At the City of Hollywood Police Department, the transport officer advised that he located

**SENDER:**
- Complete items 1 and/or 2 for additional services.
- Complete items 3, 4a, and 4b.
- Print your name and address on the reverse of this form so that we can return this card to you.
- Attach this form to the front of the mailpiece, or on the back if space does not permit.
- Write 'Return Receipt Requested' on the mailpiece below the article number.
- The Return Receipt will show to whom the article was delivered and the date delivered.

I also wish to receive the following services (for an extra fee):

1. ☐ Addressee's Address
2. ☐ Restricted Delivery

Consult postmaster for fee.

| 3. Article Addressed to: | 4a. Article Number |
|---|---|
| The Honorable Mara Giulianti, Mayor<br>City of Hollywood<br>2600 Hollywood Blvd.<br>Hollywood, FL 33022-9045 | P 459 684 005 |

4b. Service Type

☐ Registered        ☒ Certified
☐ Express Mail       ☐ Insured
☐ Return Receipt for Merchandise  ☐ COD

7. Date of Delivery

5. Received By: (Print Name)

8. Addressee's Address (Only if requested and fee is paid)

6. Signature: (Addressee or Agent)
X

PS Form 3811, December 1994                    Domestic Return Receipt

*Is your RETURN ADDRESS completed on the reverse side?*

*Thank you for using Return Receipt Service.*