**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO: 00-6069 CIV-FERGUSON
Magistrate Snow

MOSES HOPE,

    Plaintiff,

v.

DAVID STRAUSS, individually
ANTHONY FERNANDEZ, individually
and the CITY OF HOLLYWOOD,
Florida municipal corporation

    Defendant.
_____/

**DEFENDANT CITY OF HOLLYWOOD'S REPLY TO**
**PLAINTIFF'S RESPONSE IN OPPOSITION OF DEFENDANT'S**
**MOTION FOR SUMARY JUDGMENT**

The Defendant City of Hollywood, ("HOLLYWOOD"), by and through its undersigned counsel, hereby files its Reply to Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment as to Counts II-III, and in support thereof states:

1. Plaintiff, in his Response to HOLLYWOOD'S Motion for Summary Judgment, has still failed to provide any competent evidence circumstantial or otherwise, that would show that there is any material issue of fact in dispute to preclude Summary Judgment in favor of HOLLYWOOD.

2. Plaintiff's Rule 7.5 Statement consists of a sequence of events as told by the Plaintiff himself. Even if this sequence of events occurred as the Plaintiff states, which HOLLYWOOD denies, it would still not constitute any custom, policy or practice that the City engaged in to establish a violation pursuant to Title 42 § 1983.

1

3. HOLLYWOOD denies that what the Plaintiff has labeled as a Rule 7.5 concise statement of facts is not a concise statement of facts and therefore denies the same.

4. In addition, Plaintiff addresses at length the subsequent arrest of Dwight Edman on January 31, 1996. This lengthy discussion of the arrest of Dwight Edman has absolutely no relevance to the arrest of Moses Hope, who was arrested four and one half months earlier, and cannot be considered to establish that HOLLYWOOD had a custom, policy or practice of negligently supervising its officers to allow the officers to plant false evidence to obtain a criminal conviction. Similarly, the arrest of Mr. Edman cannot be used to establish that HOLLYWOOD had a policy to pre-notarize affidavits to effectuate an arrest.

5. The arrest of Mr. Edman occurred four and one half months **after** the arrest of the Plaintiff. Plaintiff is trying to establish that because the same officers were involved in both arrests HOLLYWOOD knew or should have known of this custom, policy or practice of pre-notarizing affidavits and that this allegedly encouraged the act of planting false evidence. Plaintiff fails to realize that an arrest after the fact cannot prove that HOLLYWOOD knew beforehand that its officers were pre-notarizing affidavits or that its officers were negligently supervised.

6. The facts established in Edman have no connection to Plaintiff's arrest and for the Court to consider the Edman litigation in this matter would be prejudicial to HOLLYWOOD under Federal Rules of Evidence 403. The probative value of such evidence is outweighed by the prejudicial effect it would have in this matter especially given the fact that the arrest of Edman was after the Plaintiff's arrest.

7. Plaintiff's Rule 7.5 Statement of facts does not present a dispute to any material

facts presented by HOLLYWOOD which would preclude the entry of Summary Judgment in HOLLYWOOD'S favor.

## PURPOSE OF SUMMARY JUDGMENT

The purpose of a Motion for Summary Judgment is to "pierce the allegations in the pleadings, thereby permitting the court to determine whether a factual basis actually exists for the petitioner's claims". Save Our Cemeteries, Inc. v. Archdiocese of New Orleans, Inc., 568 F.2d 1074, 1077 (5th Cir. 1978). Moreover, another beneficial purpose of Rule 56 is to allow a court to perform its screening function appropriately by preventing **factually unsupported claims** from proceeding to trial. See Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987)("Recent cases of the Supreme court have made increasingly clear, however, the affirmative obligation of the trial judge to prevent 'factually unsupported claims and defenses' from proceeding to trial.")(citing Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.Ct. 2548 (1986)); Anderson v. Liberty Lobby, 477 U.S. 242, 106 S.Ct. 2505 (1986)

Plaintiff, in his Rule 7.5 Statement of facts, has inundated this Court with conclusory allegations, which are not material facts relevant to this motion. Plaintiff's burden to defeat a Motion for Summary Judgment is to show a genuine dispute exists on a material fact. Setting forth conclusory allegations or evidence are insufficient to meet this burden. Wood v. City of Lakeland, Florida, 203 F.3d 1288 (11th Cir. 2000). See also, Terrell v. US Air, 132 F.3d 621 (11th Cir. 1998) (citing Holifield v. Reno, 115 F.3d 1555 (11th Cir. 1997) (holding that conclusory allegations, without more, are insufficient to withstand summary judgment).

3

### MEMORANDUM OF LAW

**A.    Custom, policy and practice claim pursuant to 42 U.S.C. §1983:**

In his Response, Plaintiff reiterates the allegation he made in Count II of his Complaint, that HOLLYWOOD knew or should have known of the wide-spread practice of its officers violating the notary public state laws and its the supervisors failed to review the unsworn reports of their subordinates. Plaintiff further alleges that HOLLYWOOD failed to implement policies designed to eliminate this practice or otherwise discipline those who violated the law. (Plaintiff's Response page 10). However, Plaintiff has failed to support his allegations through any competent evidence, circumstantial or otherwise, that HOLLYWOOD has or had a custom policy or practice of allowing the use of pre-notarized affidavits or of allowing its police officers to plant evidence.

In order to establish a custom, policy or practice the Plaintiff must affirmatively establish a particular "policy or custom" that is held by the city and prove how the policy or custom has caused his injury" Bennett v. City of Slidell, 728 F.2d 762, 767 (5th Cir. 1984)(en banc). The Plaintiff relies on the Court's decision in Brooks v. Scheib, 813 F.2d 1191 (11th Cir. 1987) for the proposition that a municipality's failure to correct the constitutionally offensive actions of its police department may rise to the level of a custom or policy if the municipality tacitly authorizes these actions or displays deliberate indifference towards the police misconduct Id. at 1193. However the Plaintiff fails to produce any evidence which establishes that HOLLYWOOD had a policy in place that authorized, required or allowed in the pursuit of its legal duties to use pre-notarized affidavits. The Plaintiff also fails to show that HOLLYWOOD knew or should have known or authorized any policy or practice which allowed its police

officers to plant evidence to obtain criminal convictions. Moreover, Plaintiff further fails to show that this "policy" somehow resulted in the alleged injuries to the Plaintiff. Finally the Plaintiff fails to establish that Sgt. Marano was the final policymaker within the City to attach municipal liability to the City under §1983. In Samedi v. Miami-Dade County, 2001 WL 268203 (S.D. Fla.) the Court held that because the record in that case was devoid of any evidence raising a genuine question that the Defendant was vested with the final decision making authority at the County, it found no County policy existed. Id. at 23. *See also* Church v. Huntsville, 30 F.3d 1332, 1343 (11th Cir. 1994) (holding that the imposition of municipal liability requires a decision by a final policymaker, not a "principal" one).

Plaintiff relies on the deposition of Kathleen Skinner which was taken during the litigation of Dwight Edman and not during this matter. Plaintiff states that according to Ms. Skinner, as of the date of Plaintiff's arrest the use of pre-signed affidavits were used on a department-wide basis. (Plaintiff's Response page 11). Plaintiff cites to Ms. Skinner's deposition wherein she states that pre-signed affidavits were used "virtually exclusively" until the time she left in November, 1995 (Skinner depo pp. 17-18). However the Plaintiff has not brought forth any evidence which would establish that a pre-signed affidavit was used in his arrest. On the contrary, Officer Fernandez stated during his deposition that he completed the affidavit on the same day of the arrest, signed and had notarized on that same day and forwarded the affidavit with the Plaintiff as required by the Broward County Jail. (Fernandez depo pp. 52, line 17-20)[1] Plaintiff has not and cannot dispute Officer Fernandez's testimony.

In addition the affidavit of Joel Cantor which was previously submitted as Exhibit B in support of HOLLYWOOD'S Motion for Summary Judgment, Mr. Cantor states undisputedly to

---

[1] Defendant HOLLYWOOD previously submitted Officer Fernandez in support of its Motion for Summary Judgment on January 16, 2001.

the fact that "it is the custom, policy and practice of the Hollywood Police Department to instruct its officers to properly conduct their lawful duties while enforcing the laws of the State of Florida and the City of Hollywood". Mr. Cantor's affidavit specifically identifies the training the officers must complete to become knowledgeable of the proper procedures mandated to effectuate an arrest. The Plaintiff failed to provide any evidence that would refute any of the policies and practices Mr. Cantor articulates. Mr. Cantor also states that prior to the date of the Plaintiff's arrest neither Officer Strauss nor Officer Fernandez ever had any complaints or charges brought against them for violations of any Police Department rules and regulation. It is therefore undisputed that HOLLYWOOD would not have knowledge that Officer Fernandez and Officer Strauss used pre-notarized affidavits. In Depew v. City of St. Marys, 787 F.2d 1496, 1499 (11th Cir. 1986), a police brutality case, the Court held that to establish a practice or custom, " it is generally necessary to show a persistent and widespread practice. Moreover, actual or constructive knowledge of such customs must be attributed to the governing body of the municipality". In that case the Court upheld a jury verdict for the Plaintiff on the basis that there had been five prior incidents of excessive force. The Court concluded that "the city had knowledge of improper police conduct, but failed to take proper remedial action and the jury could legitimately infer that the city had implicitly ratified a custom or policy permitting the police to use excessive force against its citizens". Id. at 1499.

The Plaintiff in this case has not established one scintilla of evidence that HOLLYWOOD implemented a policy or procedure to allow its officers to use false or planted evidence to obtain a conviction or that HOLLYWOOD authorized any such policy or procedure as required under Brooks v. Scheib, 813 F.2d 1191, 1193 (11th Cir. 1987). The Plaintiff has not established that Officer Fernandez or Officer Strauss falsified or planted the narcotics that were

found at the scene of the arrest. The undisputed testimony is that Officer Fernandez has testified to the fact that after watching the Plaintiff retrieve the crack cocaine from the location on two different occasion, he spoke via police radio to which Officer Strauss walked over to the described location to retrieve the narcotics, which he retrieved and subsequently had tested and which tested positive for cocaine (Fernandez depo page 29, Line 16-20 and Strauss Depo pp.74, 110-111 and Exhibit #6 attached to Officer Strauss deposition).

The Plaintiff wants this Court to conclude that because HOLLYWOOD was found liable in the matter of Dwight Edman v. Jeffrey Marano, individually, Anthony Fernandez, individually, and the City of Hollywood, a Florida Municipal Corporation, Case No. 97-6825-Civ-Ferguson/Snow, for violating state notary laws, that HOLLWYOOD is also liable for using pre-notarized affidavits during the arrest of Moses Hope which occurred approximately four and one half months prior to the arrest of Mr. Edman and therefore HOLLYWOOD had a policy and practice of violating state notary laws and such policy was the moving force behind constitutional violations. However, the holding and evidence established in Edman is not only irrelevant in the present matter but would also be inadmissible during trial and therefore should not be considered in a Motion for Summary Judgment. "In order to defeat a motion for summary judgment, a plaintiff must present admissible evidence...Material that is inadmissible will not be considered on a summary judgment motion because it would not establish a genuine issue of material fact if offered at trial" Samedi 2001 WL 268203 at 6.

In addition Edman should not be considered because the Plaintiff has not established that a pre-notarized affidavit was used to effectuate this arrest but more importantly HOLLYWOOD has established that the probable cause affidavit was not pre-notarized as sworn to by Officer Fernandez. Since the Plaintiff has not established that HOLLYWOOD had a custom, policy or

practice of pre-notarizing affidavits and/or had a policy of authorizing its officers to plant evidence to effectuate an arrest, Summary Judgment in favor of HOLLYWOOD is appropriate.

**B.)   Negligent Supervision**

Pursuant to Florida's Waiver of Sovereign Immunity Act, a Plaintiff may recover in a tort action against a governmental entity or a governmental employee, but not both. The governmental employer is liable for the tort (and the governmental employee is not) unless the employee "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety or property". Conversely, if the employee's acts were "committed outside the course and scope of her or his employment, were committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety or property", the governmental employee may be held liable, but the governmental entity cannot. Fla. State §768.28(9)(a). In Count III of his complaint Plaintiff alleges that Sergeant Marano failed to supervise his subordinates and failed to prevent the alleged use of false evidence by failing to review the reports submitted. Plaintiff refers to the fact that Sgt. Jeffrey Marano admitted that he did not review the police reports prepared by his subordinates in the street crimes unit, which included Officer Fernandez and Officer Strauss. However Plaintiff has not established that Sgt. Marano failed to review the reports drafted for the Hope arrest. Plaintiff again relies on the evidence established in the Edman litigation, which occurred more than four months after this matter, which is irrelevant and misplaced in this matter. Plaintiff alleges that because the officers' immediate supervisor failed to review their reports they were more inclined to falsify and plant evidence in an effort to obtain criminal convictions. This case is analogous to the case of Mason v. Florida Sheriff's Self-Insurance Fund, 699 So. 2d 268 (Fla.

5th DCA 1997). In Mason, a sheriff's deputy had a warrant for the arrest of Ms. Mason and appeared at Mason's house to serve the warrant. Mason alleged that the deputy told her that he would not arrest her on the warrant if she agreed to have sexual intercourse with him. Mason agreed, and thereafter filed suit. The court held that the deputy's actions were not committed within the course and scope of his employment, notwithstanding the fact that the deputy was on duty, in uniform and charged with the responsibility of serving the warrant. The instant case is similar.

If in fact Sgt. Marano did not review the reports of his subordinates in this case and if this somehow provoked the officers to plant false evidence, this lack of supervision and act of planting evidence against an individual would be outside the course and scope of the supervisors employment and would be committed in bad faith or with a malicious purpose by the officers involved. If Plaintiff's allegations were taken as true then the only connection that the City of Hollywood would have had to Sgt. Marano's actions is that Marano was on duty and in uniform as no legitimate law enforcement activity was being advanced when Sgt. Marano allegedly failed to review the reports of his officers.

In addition, as stated previously, there was no record of evidence that either Officer Fernandez or Officer Strauss had a history of complaints or violations of police policy and procedures against them. Therefore, HOLLYWOOD would not have notice that they were negligently supervised. In Samedi, the Court held that negligent supervision occurs when "the employer becomes aware, or should have become aware, of problems with an employee that indicates his unfitness, and the employer fails to take further action such as investigation, discharge or reassignment" Samedi WL 268203 at 26 *quoting to* Grice v. Air Prods. & Chems., Inc., 82 Fair Empl. Prac. Cas. (BNA) 532, available at 2000 WL 353010, at 14, (N.D. Fla. Feb.

9

17, 2000) (citations omitted). In that case the court held that the employer had no reason to know of the alleged harassment until the Plaintiff filed her charge of discrimination with the EEOC. Samedi is analogous to this case because the Officers did not have a history of complaints or even allegations that they were violating any police procedures or more importantly that they pre-notarized probable cause affidavits. Thus, HOLLYWOOD could not have been put on notice that the officers were negligently supervised.

Accordingly, as a matter of law, Sgt. Marano's actions or lack thereof, as alleged were outside the course and scope of his employment, committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety and property. Furthermore, since HOLLYWOOD had no notice that the officers were negligently supervised summary judgment should accordingly be entered in favor of HOLLYWOOD on this claim.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing was mailed this /3th day of April, 2001 to the above-named addresses and to: Hugh L. Koerner, Esq. 100 S.E. Sixth Street, Fort Lauderdale, FL  33301 and Bruce W. Jolly, Esquire, Purdy, Jolly & Giuffreda, P.A., 1322 S.E. Third Avenue, Fort Lauderdale, FL  33316.

> Respectfully submitted,
> DANIEL L. ABBOTT,
> CITY ATTORNEY
> City of Hollywood
> 2600 Hollywood Boulevard, Suite 407
> Hollywood, Florida 33020
> Telephone:  (954) 921-3435
> Telecopier:  (954) 921-3081
> By: /s/ Tracy A. Lyons
> Tracy Lyons
> Assistant City Attorney
> Fla. Bar No. 0141585

**HOLLYWOOD POLICE DEPARTMENT**
**BROWARD COUNTY, FLORIDA**
**PROPERTY RECEIPT**

| 78. | ☐ PROPERTY OF DECEASED | ☐ TRIAL | ☐ FOUND PROPERTY | ☐ LABORATORY (ATTACH MEMO) | ☐ STOLEN-RECOVERED |
|---|---|---|---|---|---|

| 2. CASE NO. | 79. DATE - TIME RECEIVED | INVESTIGATING DIVISION | 76. TYPE OF CASE |
|---|---|---|---|
| 95-119747 | 9-17-95 @ 1811 HRS. | HOLLYWOOD P.D. | NARCOTICS |

77. ADDRESS WHERE PROPERTY IMPOUNDED (GIVE EXACT LOCATION WHERE FOUND)
2247 SIMMS STREET

16. FOUND BY: OFC. STRAUSS #2039    ADDRESS    PHONE NO.

31. SUSPECT(S) (GIVE FULL NAME, D.O.B.): MOSES BRYANT HOPE B/M 12-27-66    ADDRESS: 2210 DOUGLAS STREET HOLLYWOOD FL.    PHONE NO. 926-7922

14. VICTIM: STATE OF FLORIDA    ADDRESS    PHONE NO.

49. OWNER'S NAME: SAME AS SUSPECT    ADDRESS    ZIP CODE    PHONE NO.

| 80. ITEM NO. | 81. QUANTITY | 82. DESCRIPTION |
|---|---|---|
| 1 | 2 | OFF WHITE ROCKS CONTAINED IN BLUE ZIP-LOC BAGGIE SUSPECT COCAINE |
| | | VALTOX POSITIVE |
| | | END... |

**EXHIBIT 6**

83. I hereby acknowledge that the above list represents all property taken from my possession and that I have received a copy of this receipt.

SIGNATURE (X): NORMAN

20. I hereby acknowledge that the above list represents all property impounded by the official performance of my duty as Deputy Sheriff.

BADGE NO. 2039    UNIT NO. Y-5    DIV. S.C.U
IMPOUNDING OFFICER    SIGN -    PRINT D. STRAUSS

| 84. RECEIVED BY | REASON | DATE AND TIME RECEIVED |
|---|---|---|
| | MB | 9-18-95 0700 |
| RECEIVED BY | MB | 9/18/95 10/0 |
| RECEIVED BY | REASON | DATE AND TIME RECEIVED |
| RECEIVED BY | REASON | DATE AND TIME RECEIVED |
| RECEIVED BY | REASON | DATE AND TIME RECEIVED |
| RECEIVED BY | REASON | DATE AND TIME RECEIVED |

85. FINAL DISPOSITION    AUTHORITY    DATE AND TIME OF DISPOSITION

| BSO PROPERTY DIVISION USE ONLY | | | | |
|---|---|---|---|---|
| RECEIPT NO. | BIN NO. | PAGES (IF APPLICABLE) | | BSO CASE NO. |
| | | PAGE OF PAGES | | |

1    A.  I went over to where the fishing pole was
2  and started searching for the dope.  I could hear
3  him talking on the radio which is on your hip in a
4  little case.  And I just kept looking over there by
5  the fishing poles.  I located a small glassine
6  baggy.  It was blue in color under the fishing pole
7  on the east side.
8    I don't know if you could understand that.
9  The fishing pole is coming off the tree and under
10 it, which would be in the triangle portion of the
11 fishing pole hidden in the ground, I located the
12 baggy and a larger cocaine rock and a smaller
13 cocaine rock in it.
14    Upon seeing it I brought it back to my
15 car.  I don't remember if I placed it in the exact
16 evidence bag we used but I secured it in something
17 with the name on it and left it in the vehicle.
18    Q.  Do you recall whether you received any
19 instructions or assistance from Officer Fernandez as
20 you began your search of the area of the tree
21 furthest to the north?
22    A.  Yes, I did.
23    Q.  And do you have any independent
24 recollection of what those instructions were?
25    A.  No, I don't.

110

1 the height of Mr. Medlock?
2     A.   If I look at his probable cause affidavit
3 I could tell you.  I can't give you that information
4 right now.
5     Q.   Can you describe for me any other
6 activities that you observed at the area of 2247
7 Simms Street other than what you disclosed for me so
8 far here today?
9          MR. JOLLY:  Objection, form.
10    A.   (By the Witness)  No.
11    Q.   Are you able to tell me what it was that
12 you did specifically with regards to the glassine
13 baggy that you recovered after it was put in the
14 police car?
15    A.   Yeah.
16    Q.   What did you do?
17    A.   Placed it into BSO property.  Valtox
18 tested it first, excuse me.  Then placed it in BSO
19 evidence's property and sent it to BSO lab.
20    Q.   What is a valtox test?
21    A.   Valtox test is a test to see if there is
22 cocaine presence in the substance that you're
23 submitting to try somebody for possession of
24 narcotics.  Specifically 893.13.
25    Q.   And where did you conduct the valtox test

1  at?
2      A.   Pretty sure I did one out on scene.
3  That's what I usually did.  And I probably did
4  another one back when I got into headquarters.
5      Q.   And do you know whether any other law
6  enforcement officer had an opportunity to observe
7  you perform your valtox test?
8      A.   I have no idea.  I couldn't tell you who
9  was there.
10     Q.   Did you use any of the suspect cocaine
11 rock that you obtained from the glassine baggy in
12 performing your valtox test?
13     A.   Yes.
14     Q.   How many rocks were in the baggy?
15     A.   Two.
16     Q.   Did you use the big or the small rock to
17 conduct your valtox?
18     A.   Both.
19     Q.   And how was it that you retrieved cocaine
20 rocks from the glassine baggy?
21     A.   Retrieved.  I took them out.
22     Q.   During the time that you handled the baggy
23 did you undertake any efforts to preserve the
24 integrity of the baggy for fingerprints?
25     A.   I don't think so.